**LAW OFFICES OF DAVID A. TORRES**
David A. Torres, SBN 135059
1318 "K" Street
Bakersfield, California 93301
Tel.: (661) 326-0857
Fax: (661) 326-0936

Attorney for
Jose Trinidad Salas

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Case No.: 14-cr-00046-LJO-SKO |
| Plaintiff, | ) |
| | ) MOTION TO TRAVERSE; REQUEST FOR |
| | ) HEARING PURSUANT TO <u>FRANKS V.</u> |
| | )  <u>DELAWARE</u>. |
| | ) |
| vs. | ) Date: January 12, 2015 |
| | ) Time: 10:00 a.m. |
| JOSE TRINIDAD SALAS, | ) Honorable Lawrence J. O'Neil |
| | ) |
| Defendant. | ) |

**TO: BENJAMIN B. WAGNER, UNITED STATES ATTORNEY, LAUREL MONTOYA ASISTANT UNITED STATES ATTORNET, COUNSEL FOR PLAINTIFF:**

PLEASE TAKE NOTICE that on January 12, 2015 at 10:30 a.m., or as soon thereafter as counsel may be heard before the HONORABLE LAWRENCE J. O'NEIL, United States District Court Judge, the defendant, Jose Trinidad Salas, requests a hearing on the following motion to traverse and requests a hearing pursuant to <u>Franks v. Delaware</u> and subsequent suppression of all evidence found and statements made during the search at 12554 Davis Road, McFarland, California.

Dated: 12/12/14                                 LAW OFFICE OF DAVID A. TORRES

                                                            BY:  _/s/David A. Torres_____
                                                                   DAVID A. TORRES
                                                                   Attorney for Jose Trinidad Salas

**STATEMENT OF THE FACTS**

**A.  SUMMARY OF AFFADAVIT**

On February 18, 2014, Affiant, Special Agent Micah Sutrov, submitted an application for a search warrant at 12254 Davis Road, McFarland, California.  The Honorable Jennifer L. Thurston authorized the search warrant on that same date.  The affidavit in support of the search warrant details Affiant's experience and training.  Affiant points out his years of experience with drug investigations and his knowledge as to the common habits and customs of "narcotic traffickers." Specifically, he points out that narcotic traffickers typically place assets in names of others and that traffickers commonly have fruits of their drug trafficking activities stored in their home.

In support of Affiant's request, Affiant details numerous intercepted calls made or received by Jose Trinidad Salas.  However, the affidavit begins with Affiant mentioning his contacts with a confidential informant who claims that he knows Mr. Salas to be a "large scale cocaine, methamphetamine, heroin and marijuana distributor and bulk cash smuggler."  Affiant further claimed that the Confidential Informant met up with Mr. Salas in January 2013 at EM Trucking. While at EM Trucking, Mr. Salas informed the Confidential Informant that the diesel tanks were made with hidden compartments.  Mr. Salas received a truck and two suitcases from the owner of EM Trucking as a gift.  The Confidential Informant claimed that he was then ordered by Mr. Salas to follow him as he drove back to 12254 Davis Road.  He further was ordered by Mr. Salas to cause the police to pull him over if the police began to follow Mr. Salas. None of this information was corroborated by any outside source.

In August of 2013, Affiant requested authorization for a wiretap of Mr. Salas' phone which was granted by the Honorable Lawrence J. O'Neill.  Affiant's request to wiretap Mr.

Salas' phone continued until January 17, 2014.  Through this five to six month span, Affiant monitored numerous phone calls made or received by Mr. Salas.

- **August 27, 2013:** Mr. Salas called Jose Luis Vazquez Millan aka Chepe. They speak of the "main guy out there" having an appointment to get a Visa.  The conversation continues about "some guys" wanting to meet someone trustworthy.  Chepe later states, "Everything is good. With, with a good number of rims and well everything."  The call is continued and Chepe agrees to bring $2000 to Mr. Salas during Mr. Salas' lunch.

- **September 11, 2013:** Chepe calls Mr. Salas in regards to a telephone number.  Mr. Salas indicates "I never talk to him…and I never see him." Chepe states that there are things for him to look at. Mr. Salas suggests that he call Guara.  The conversation continues regarding everyone there being at a standstill because no one can contact the person who changed his/her number.

- **September 17, 2013:** Mr. Salas was informed that cops were getting ready to "bust a mission" somewhere.  He informed Mr. Salas that there were at the library on Kern and they were going to raid a house.  Mr. Salas speaks to another unknown male in regards to a possible firearm located at his residence.  He requested the unknown male to retrieve the possible firearm because cops were getting together in McFarland.  During the conversation the unknown male states, "…you don't have anything else around there?" Mr. Salas, "no…no…no…just that."

- **September 28, 2013**: Salas speaks to unknown male referred to as OSO.  OSO indicates that he was hired in the hood on one-eleven.

- **October 3, 2013**: Darnell Taylor called Mr. Salas in regards to a broken gate.  Mr. Taylor was inquiring whether Mr. Salas had a motor for the gate and Mr. Salas informed him that he did but the motor was too big so he should just get the motor fixed or replace it with small motor.

- **October 3, 2013**: Mr. Salas speaks to a man named Eusubio.  Eusubio discusses the broken gate motor and he does not want to buy a new one.  He informs Mr. Salas that he believes

he can turn the power down on the big motor so it can work on the broken gate. The conversation continues about the broken gate and how it opened but it won't close.  Eusubio then informs Mr. Salas that Chepe wanted to buy a grey little Honda that Mr. Salas gave to Eusubio.  Eusubio then indicates that Eva's father was giving Chepe "yada-yada" there.  Eusubio states, "It seems like they harvest there, uh grapes, right?"  Mr. Salas states, "I think…oh, yes, yes…yes, that's true." Eusubio indicated he would take ten of the grapes.  As the conversation goes on, Mr. Salas states, "How is the water there?" Eusubio states, "oh, man…well more less, dude…we've stalled because of…the ride, but everything is good dude as soon as it gets fixed then they'll leave, yada-yada."

- **October 3, 2013**: Chepe calls Mr. Salas to inform him he changed the truck papers and will take the papers to Mr. Salas.

- **October 16, 2013:** Eusubio calls Mr. Salas about a "guy" getting arrested near Tio's Tacos.  He states to Mr. Salas that he was on his way to do something and he got caught with that shit.  Mr. Salas shows concern for Chepe and the possibility of him being "bugged."  Mr. Salas and Eusubio continue discussing what the "guy" needs to say in regards to the car.  Later Eusubio informs Mr. Salas that the "guy's" bail is $30,000.  The discussion continues as to why the bail is so low. Eusubio informs Mr. Salas that "D" is not here anymore.  Mr. Salas at first did not know who he was talking about but Eusubio informed Mr. Salas that "D" had to take care of something so he took off.  He indicated that he told "D," "I'll send you a little bit, over there, over where Corey was."

- **October 16, 2013**: Darnell Deshawn Taylor calls Mr. Salas to tell him that he is out in Mississippi with Corey. An unidentified male gets on the phone and informs Salas, "well…we're

trying to retire like you man." Mr. Salas tells them to not do it because they just started. The phone is returned to Mr. Taylor and Mr. Salas inquires as to when he is returning.

- **October 16, 2013**: Mr. Salas called Chepe. Chepe asks Mr. Salas if he heard about Guara. Mr. Salas states, "Yes." Chepe states, "Yeah, that's how things are."

- **October 19, 2013**: Eusubio calls Mr. Salas and they speak of the "guy" who was arrested. Eusubio states, he told him to not go over with Gordito if they just throw out his case. Eusubio continues to state that he thinks if they let him go it's just because they are trying to watch him and see where he goes. Salas agreed. Eusubio and Mr. Salas continue their conversation about using the "Benzillo" if the plates are changed. However, Mr. Salas, "No, even if you changed the plates on that fucker dude, they know that one really well." Eusubio then asks Mr. Salas if the Avalanche he has over there is fixed. Mr. Salas states that everything would need to be changed on the Avalanche. Mr. Salas later tells Eusubio his concern with combining all that mess from there to here and if that happens they will not get out with what they have. Eusubio then later agrees that he is going to have purchase a car at the dealership.

- **October 21, 2013**: Eusubio calls Mr. Salas and they discuss "D." Mr. Salas asks if "D" did good over where he went. Eusubio states, "No." Eusubio informs Mr. Salas "how was he going to do good if they caught that guy." Mr. Salas states, "He's there and no yada-yada." Mr. Salas then inquires about the "guy" who was arrested. Eusubio indicates he does not have any information but he was going to give him some money.

- **December 20, 2013:** Mr. Salas received a call from a woman named Marta. Marta informed Mr. Salas that the streets were blocked where Luis lives. Mr. Salas indicated that he did not know what it was about and that he did not know any numbers to see what was occurring.

Mr. Salas then states, "Who knows…I can honestly tell you uh, I can tell that I don't…well I never, never speak with them."

• **December 20, 2013**: Mr. Salas speaks to Robert and asks him to call his girl to see if "big boy" is alright.

• **December 20, 2013**: Robert calls Mr. Salas and tells him that "Big Boy" will try to call him.  Mr. Salas indicates that he is at work but that he will call him.

• **December 20, 2013**: Robert calls Mr. Salas again and tells him that everything is all right. He informed Mr. Salas that the roads were blocked because there was a high speed chase.

• **December 24, 2013:**  Mr. Salas received an incoming text message from an unidentified male: "Butibai k asiendo. Hope u have a good xmas eve foo I love u thank u for everything butibai may God bless u witt life full of happiness, ur brother LU."

Affiant lends his interpretation of the conversations he monitored based on his training and experience. He explains that he believes Mr. Salas' discussion confirm that he is the owner of numerous cars and properties that are not in his name.  He jumps to this conclusion based on his assumption that Mr. Salas is supposedly making decisions regarding the cars and properties. He further points out that Mr. Salas has no legitimate source of income.  Affiant goes on to allege that Mr. Salas talks in code during some of his conversations. For example, when "grapes" is mentioned Affiant indicates that this term is often used for marijuana.  Affiant claims when "water" is mentioned that is in reference to the business.  He even claims when the term "out there" is stated, Mr. Salas is speaking of Mexico.

Affiant further provides information about two arrests made during the pendency of his investigation.  The first arrest mentioned by Affiant was of Rodolfo Rodriguez aka Guala/Guara. Mr. Rodriguez was arrested on October 15, 2013 after a traffic stop.  The car that Mr. Rodriguez

was driving was registered to Jose Millan Vazquez (Chepe).  The arrest occurred near 3900 West 111th Place, which is believed to be owned by Mr. Salas.  During the traffic stop, a sealed United States Postal box was seen in the front seat. During a later search of the package, suspected methamphetamine was located.  The second arrest occurred on or about November 15, 2013. Darnell Deshawn Taylor was arrested at the Amtrak station in Albuquerque, New Mexico. When officers searched his checked in suitcase, 3.1 kilograms of methamphetamine was located. Mr. Taylor was on his way to Jackson, Mississippi.

Based upon the abovementioned information, Affiant applied for a search warrant at 12254 Davis Road, McFarland Avenue to search for indicia of narcotics trafficking.

## B. DECLARATION OF PRIVATE INVESTIGATOR ROBERT GONZALEZ

Private Investigator Robert Gonzalez reviewed Affiant's affidavit and inquired as to the veracity of the statements provided by Affiant.  Investigator Gonzalez learned that Mr. Salas did in fact have a legitimate source of income from multiple sources.   Mr. Salas performed construction work and bred, trained and sold horses.

Investigator Gonzalez also learned that the true owner of 3900 West 111th Place Inglewood, California is Eusubio Rivera Salas, which is mentioned in the affidavit.  What was not mentioned in the affidavit is:

- Mr. Rivera-Salas has a legitimate source of income.

- Mr. Rivera-Salas' wife has a legitimate source of income.

- Mr. Rivera-Salas lived in Inglewood, California until 2006.

- Mr. Rivera-Salas worked in Inglewood for 18 years until he was laid off in 2006.

- In 2006, Mr. Rivera-Salas received approximately $116,000 from his 401K and severance pay.

- Mr. Rivera-Salas moved to Utah for employment in 2006.

- Mr. Rivera-Salas currently lives in Utah with his wife.

- Mr. Rivera-Salas rents the property in Inglewood to a person by the name of Tigo for $1700 a month.

- The rental income is used to pay the mortgage on the property.

- Mr. Rivera-Salas is monolingual in Spanish.

Although the statements in Affiant's were provided to the Court as true and accurate, Investigator Gonzalez effortlessly deemed these facts as unfounded speculation.

## LEGAL ARGUMENT

### I.
### REASONABLE EXPECTATION OF PRIVACY

The Fourth Amendment provides that the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.  The Fourth Amendment protects people not places.  Katz v. United States, 389 U.S. 347, 351 (1967).  Therefore, it is incumbent open the defendant to demonstrate a legitimate expectation of privacy in the place searched or the thing seized.  Rakas v. Illinios, 439 U.S. 128, 143 (1978).  The capacity to claim the protection of the Fourth Amendment depends not upon the property right in the invaded place but upon whether the person who claims the protection of the Fourth Amendment has a legitimate expectation of privacy in the invaded place. Id. at 143. A person's expectation of privacy is legitimate if it is one that society is prepared to recognize as reasonable.  Katz, 389 U.S. at 361.  Although not dispositive, one who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of the right to exclude.  Rakas, 439 U.S. at 143 n. 12.

Here, there is no question that Mr. Salas was more than a guest at the home searched. Therefore, Mr. Salas has a reasonable expectation of privacy at 12254 Davis Road and can challenge the warrant that was executed at the residence.

## II.

### THE AFFIDAVIT CONTAINED MATERIAL FALSE STATEMENTS WHEN SUBMITTED TO MAGISTRATE JENNIFER THURSTON; THEREFORE, DEFENDANT IS ENTITLED TO AN EVIDENTIARY HEARING

An accused may attack a search warrant affidavit on the ground it omits material facts adverse to the warrant application or contains false statements. Franks v. Delaware (1978) 438 U.S. 154, 98 S.Ct. 2674.  As the United States Supreme Court in Franks v. Delaware, supra, observed, "It is the magistrate who must determine independently whether there is probable cause. [Citations omitted.] It would be an unthinkable imposition upon his authority if a warrant affidavit, revealed after the fact to contain a deliberately or reckless false statement, were to stand beyond impeachment." Id. at p. 165.  The Court further explained the reason for allowing a defendant to impeach the content of a search warrant affidavit is to avoid nullification of the probable cause requirement.  "The requirement that a warrant not issue, 'but upon probable cause, supported by oath or affirmation,' would be reduced to a nullity if a police officer was to use deliberately falsified allegations to demonstrate probable cause, and having misled the magistrate, then was able to remain confident that the ploy was worthwhile." Id. at p.168.

Accordingly, where a defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth was included by an affiant in his affidavit for a search warrant, and if the alleged false statement was necessary to the finding of probable cause, the *Fourth Amendment* to the *United States Constitution*, requires that a hearing be held at the defendant's request, to challenge the veracity of factual statements made in the affidavit. If at such a hearing, the defendant establishes by a preponderance of the evidence the affiant deliberately made false statements or recklessly disregarded the truth, those statements must be excised and the affidavit must be re-examined for probable cause. If the affidavit's remaining content is insufficient to establish probable cause, the warrant must be quashed and the evidence obtained as a result of the search, must be excluded as if probable cause were lacking on the face of the affidavit. Franks v. Delaware, supra, 438 U.S. 154.

### A.  MR. SALAS HAS MADE "SUBSTANTIAL PRELIMINARY SHOWING"

In United States v. Johns (9th Cir.1988) 851 F.2d 1131, agents applied for a search warrant to search a mini storage unit.  The affidavit in support of the warrant alleged that an agent visited his personal storage unit with another deputy.  At that time, both officers smelled a distinct odor that they associated with methamphetamine manufacturing coming from appellant's

storage unit. Id. at p. 1132.  Appellant moved to suppress the chemicals and glassware found in the unit contended that the warrant affidavit contained statements that were wilfully or recklessly false. Id. at p. 1132.  In support of his argument, appellant offered affidavits of two chemistry professors who swore that based on the information they were provided, it was impossible for the officer to smell an odor associated with methamphetamine or its manufacturing process. Id. at p. 1132.  Appellant's request for a Franks hearing was denied. Id. at p. 1133.

The Ninth Circuit Court reversed the district court's decision because the defendant made a "substantial preliminary showing" that the affiant made statements that were deliberately false or at least in reckless disregard of the truth.  Id. at pp. 1133-1134. The preliminary showing was accomplished through appellant providing the court with information that he never engaged in any activities at the storage unit that could have produced the odors the officers allegedly smelled. This information was bolstered through expert witnesses who swore the affidavit was necessarily false because it is scientifically impossible to smell what the officers claimed to have smelled given the contents of the storage space searched under the warrant. Id. at p. 1134. The court held that the provided information amounted to a "substantial preliminary showing" that the affidavit supporting the warrant included false statements. Ibid.

Likewise, in United States v. Kyllo (9th Cir.1994) 37 F.3d 526, a search warrant was issued for appellant's residence.  Within the affidavit, affiant alleged that the level of power usage at appellant's residence was indicative of drug manufacturing and that appellant's wife had been recently arrested for possession and delivery of a controlled substance.  Id. at p. 528. Appellant moved to suppress the items found during the execution of the warrant on two theories.  As to the theory of traversal, he claimed that the affiant included false information with reckless disregard for truth about the power usage levels at his home and that affiant omitted material information about his marital status. Id. at p. 528.  The district court granted a hearing but limited the scope to statements about the power usage.  Following a hearing, the court denied Appellant's motion.  Id. at p. 528.

The Ninth Circuit Court of Appeals upheld the district court's finding the affiant did not act with reckless disregard for the truth as to the power usage levels.  However, the appellate court found that the "district court erred in refusing to consider Appellant's claim that the affiant recklessly omitted material information about his marital relationship." Id. at p. 530.  The court pointed out that appellant made the required substantial preliminary showing when he informed

that court that he and his wife were separated, she was living in a different state and she was using her maiden name.  These facts were all available to affiant; nonetheless, they were not included in the affidavit.  Id. at p. 529.  Appellant argued that his failure to check this information reveals a reckless disregard for the truth. Id. at p. 529.  The Ninth Circuit found that the omissions were material since the facts would have substantially undermined any inference that appellant was involved with drugs because his wife was.  Even more, the neutralization of his wife's arrest would have left the affidavit with three principal factual allegations: (1) Appellant used an abnormally high amount of power (2) Appellant's residence emitted heat patterns of a marijuana grow and (3) Appellant once sold marijuana.  Id. at p. 530.  The court held that Appellant successfully demonstrated prejudice and was entitled to a Franks hearing. Id. at p. 530.

In the current case, like in Johns and Kyllo, Mr. Salas must make a "substantial preliminary showing" that the affidavit contained a misleading statement and that the statement resulted from a deliberate or reckless disregard of the truth.  Here, Affiant stated that Mr. Salas has no legitimate form of income.  However, as stated above, Mr. Salas has worked lucratively in construction and he also breeds, trains and sells horses.  The income made from these businesses should have been known by Affiant since surveillance had been conducted on Mr. Salas.  Even more, the speculative statement that Mr. Salas owned 3900 West 111th Place Inglewood was misleading to say the least.  Mr. Salas did not have any modicum of ownership in that property. Mr. Salas knew the true owner, who had a legitimate source of income to pay for the property. The true owner of the property had income to pay for the property; he purchased the property over ten years prior.  He purchased the property by financing the property.   All of this information was easily ascertainable to Affiant as it was easily ascertainable to Investigator Gonzalez.  The statements provided by Affiant were misleading and false but they were provided to the Court to assist Affiant's obsession to obtain a warrant.

Also, Affiant indicates throughout a significant portion of the warrant that the "paper" or "straw owner" of 3900 West 111th place is Eusubio Rivera-Salas, which is true.  He further goes on to state that he intercepted numerous phone calls between Mr. Rivera-Salas and Mr. Salas. All of these calls were conducted in English.  However, Mr. Rivera-Salas is monolingual in Spanish.

In this case, Affiant inserted misleading and false facts in the affidavit to surmise a concoction of probable cause to the presiding judge.  The statements relied on false information

along with speculation and conjecture. Just as in the defendant in <u>Kyllo</u>, Mr. Salas has made a "substantial preliminary showing" that the affiant made statements that were deliberately false or at least in reckless disregard of the truth.

**B. THE MISLEADING INFORMATION WAS MATERIAL TO THE FINDING OF PROBABLE CAUSE**

Affiant undeniably provided false information to the Court in his affidavit. Just like in <u>Johns</u> and <u>Kyllo</u> the false information was material to the magistrate's finding of probable cause. In the current case, Affiant's affidavit provided at the most minimal facts to establish probable cause. The catalyst within the affidavit is the allegation that Mr. Salas owned 3900 West 111th Place in Inglewood, California as a straw owner. However, what affiant failed to point out was that this property was owned by a man and his wife who have lucrative jobs and who received over $100,000 from severance and 401K in 2006.

Even more, the allegation that Mr. Salas had no form of legitimate income was another factor that was material to the finding of probable cause. One of the major leaps in Affiant's affidavit is that Mr. Salas owns numerous properties through "straw owners." The reason he has to utilize straw owners is because the money he earns comes from narcotic transactions. This is far from the truth. Mr. Salas does have a legitimate source of income. Therefore, if he purchased any property, he could in fact use his own name, which Affiant should have been aware seeing his many years of experience and the extensive investigation on Mr. Salas.

These facts were easily ascertainable if Affiant used any modicum of diligence instead of attempting to mislead the court with his unfounded speculation. The information that was falsely provided went directly to establishing probable cause and it prejudiced Mr. Salas' right to have a neutral magistrate evaluate Affiant's request for a search warrant.

**III.**

**WITHOUT THE MISLEADING INFORMATION, THE AFFIDAVIT DOES NOT ESTABLISH PROBABLE CAUSE FOR THE SEARCH OF 12254 DAVIS ROAD**

The misrepresentation in the affidavit crafted a scenario to support a finding of probable cause. Without that misrepresentation, the warrant is lacking on its face because there is no connection between Mr. Salas and the allegation that he is a multi-pound methamphetamine trafficker.

In determining whether probable cause to search exists, a court must view the "totality of circumstances" set forth in the affidavit. <u>Illinois v. Gates</u> (1983) 462 U.S. 213, *reh'g* denied,

463 U.S. 1237.  The relevant inquiry under *Gates* is whether in light of all the circumstances set forth in the affidavit, there is fair probability that contraband or evidence of a crime will be found in a particular place.  Id. at 283.  In general, a court reviewing the validity of a search warrant is limited to the information contained on the face of the underlying affidavit.  *United States v. Taylor* (9th Cir.1983) 716 F.2d 701, 705.  Where, as here, a warrant's validity is challenged for deliberate or reckless falsehoods that tend to mislead, the affidavit must be considered without the information. U.S. v. DeLeon (9th Cir. 1992) 979 F.2d 761, 764.

In De Leon, Affiant was informed that three men had observed marijuana growing on Appellant's property.  Affiant and along with another agent contacted two of them.  One of the men denied seeing or smelling marijuana and the other stated that all three men smelled marijuana emanating from the outbuilding.  In the affidavit for the search warrant, affiant failed to include the statement of the first man who states he did not smell or see marijuana on the property.  Based on the omission a Franks hearing was granted.  However, the District Court determined that the omissions was neither reckless nor intentional and made a finding in favor of probable cause.  Id. at pp. 763-765.  The Ninth Circuit held that "if the omitted information had been included in the application for the search warrant, no reasonable person could have found probable cause to issue the warrant." Id. at p. 764.  In the court's analysis, it is pointed out that the warrant rested on the following: (1) the appellant's neighbor's claim that three men told him that they saw and smelled marijuana growing on appellant's property, (2) a flat denial by one of the men that he smelled or saw anything, and (3) another man's statement that although he did not see marijuana in appellant's shed and was not sure if the other men had seen marijuana, he did smell growing marijuana.  Id. at p. 764.  The Ninth Circuit acknowledged that with the omitted information, the warrant application makes clear that the two percipient witnesses questioned *denied* seeing marijuana.  Therefore, "the only remaining peg on which to hang the warrant is the claim by one of the men to have *smelled* marijuana on appellant's property." Id. at. pp. 764-765.  The court refused to support a finding of probable cause based on the claim of marijuana odor by an untrained or inexperienced person. Id. at. 765.

Likewise, in the current case, when the misleading information is omitted, in light of all the circumstances set forth in the affidavit, there is **NOT** a fair probability that contraband or evidence of a crime would have been found at 12254 Davis Road.  The DeLeon case dealt with a critical omission an omission that affected the "gist" or heart of the warrant affidavit.  That

omission is indistinguishable from the material falsehood that was included in the current affidavit because that falsehood was the "gist" or the heart of this warrant application and without that information probable cause to search 12254 Davis Road would not have been found.   The affidavit lacked any indicia probable cause because the only possible basis for probable cause was a lie.   Unlike <u>DeLeon</u>, the only peg that this warrant was standing on was misleading. Therefore, it must be removed from the affidavit, which destroys any minimal showing of probable.

**IV.**

**THE WARRANT CANNOT BE DECLARED VALID
PURSUANT TO THE DOCTRINE OF "GOOD FAITH"**

The decision in *United States v. Leon* (1984) 468 US 897, should not shield the warrant from a judicial determination of invalidity.

It is anticipated the prosecution will assert the Affiant acted in good faith. However, in some circumstances an affiant does not have reasonable grounds for believing the warrant was properly issued.

> "Suppression therefore remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his...reckless disregard of the truth.[citation omitted]. The exception we recognize today will also not apply in cases where the issuing magistrate wholly abandoned his...judicial role in the manner condemned in *Lo-Ji Sales, Inc., v. New York* (1979) 442 US 319, in such circumstances, no reasonably well-trained officer should rely on the warrant. Nor would an officer manifest objective good faith in relying on a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.[citations omitted]. Finally, depending on circumstances of the particular case, a warrant may be so facially deficient...that the executing officers cannot reasonably presume it to be valid." *United States v. Leon* (1984) 468 US 897.

*Leon*, demonstrates suppression is the appropriate remedy in four situations: (1) the issuing magistrate was misled by information the affiant knew or should have known was false; (2) the magistrate, "wholly abandoned his judicial role"; (3) the affidavit was, "so lacking in indicia of probable cause" that it would be unreasonable for the affiant to believe probable cause

existed and (4) the warrant was so facially deficient that the executing officer could not reasonably presume it to be valid.

Here, Affiant cannot redeem this affidavit through the good faith exception because he misled the magistrate. Suppression is the only appropriate remedy.

## CONCLUSION

In this case, the issuing Magistrate was provided false information in the affidavit that directly affected her determination of probable cause. Therefore, it is requested that the Court grant a <u>Franks</u> hearing and subsequently suppress all evidence derived from the baseless warrant.

Dated: December 12, 2014

By: _/s/David A. Torres_____
David A. Torres
Attorney for Jose Trinidad Salas